ALBERT NEWHALL & al., Ad'mrs vs. JOSEPH VARGAS,
and
JOSEPH VARGAS vs. ALBERT NEWHALL & al., Ad'mrs.

The stoppage of goods *in transitu*, does not rescind the contract of sale, but places the parties in the same situation, as nearly as may be, in which they would have been, if the vendor had not parted with the possession.

Where goods are sold, and delivered on board a ship of the vendee, and are stopped in their transit by the vendor, the vendee is entitled to receive payment of the freight and charges on the goods reclaimed, and has a lien upon them therefor.

This lien on the goods stopped is not divested, because the possession of them has been obtained by process of law.

And this lien remains after the vendee has died insolvent, and a commission of insolvency has been issued upon the estate, so that the vendor cannot set off any claim of his, whether for a balance due on the goods sold, or arising from prior transactions, against the claim of the administrator of the vendee for freight and charges.

Where goods are stopped in their transit by the vendor, the vendee cannot recover back a partial payment made therefor.

If goods are thus stopped, and applied to the payment of the price, and a balance still remains unpaid, the vendor may recover it of the vendee.

THE two actions pending between these parties, arose out of the same transaction, and they will be treated as one. But as the parties agreed on distinct and separate statements, the abstract of the facts will be given in the same mode.

---

NEWHALL & al. Ad'mrs vs. VARGAS.

This was an action of assumpsit, by the plaintiffs, administrators of *Samuel Winter*, to recover of the defendant, a certain sum of money, amounting to $414, received by the defendant, of *Hernandez & Co.*, on account of *Winter*; also the net proceeds of a cargo of lumber shipped by *Winter* on board the *Barque William Smith*, and finally assigned by his order to the defendant, and received and disposed of by the defendant; and likewise for the freight of a cargo of molasses, shipped by the defendant on board the same vessel, and consigned to the said *Winter*; and by the defendant afterwards stopped in transitu on account of *Winter's* death

and insolvency, and reclaimed by defendant, as will appear by the facts agreed in the former action between the present parties.

The defendant had filed in set-off an account for a cargo of molasses, of the *Brig Ann*, consigned by him to *Winter*, amounting to $5888,36, and for balance of cargo of said *William Smith*, amounting in the whole to the sum of $7869,77.

The liability of the defendant for the sum received of *Hernandez & Co.* was shewn, and *not disputed.* The shipment, consignment, and receipt of the *outward bound* cargo of lumber, was shewn and admitted. The net proceeds of sales amounted to $3619,13.

The homeward bound cargo of molasses on which freight was claimed, consisted of 457 hogsheads. And it was proved and agreed, that $4 a hogshead, was a just and reasonable freight, if any was due.

Against the claim to account for the *outward cargo* of lumber, and *freight on the return cargo*, the defendant set up in defence, and shewed in fact the shipment and consignment of the homeward bound cargo of molasses on board the *William Smith*, on account of *Winter*, and the subsequent stoppage and reclamation of the same on the arrival of the vessel at *Portland*, in transitu, in consequence of the death and insolvency of *Winter.*

It was agreed, that the statement of facts agreed by the parties in the former case of the plaintiffs against said *Vargas*, and others, in the Supreme Court of the State, together with the record of the action, judgment, writ of restitution and return, should be referred to as making part of the present case.

It was contended by the defendant, that these facts constituted a defence against the plaintiffs' demand for payment of the outward cargo, and freight on the homeward cargo. The plaintiffs maintained, that the defendant, having reclaimed and recovered the homeward cargo, was bound to account for such outward cargo and freight.

The plaintiffs objected to the admission or allowance of the set-off; and it was shewn by the defendant, that the account thereof had been by him duly exhibited to the commissioners on *Winter's* estate, and allowed, and reported in the list of claims, and had been duly allowed and filed in the Probate Court before the commence-

ment of this action. The question here raised, was as to the competency and effect of such offset.

The Judge, by consent of the parties, directed a nonsuit; judgment to be entered by agreement for plaintiffs or defendant, according to law.

---

### Vargas *vs.* Newhall & *al. Ad'mrs.*

In this case the following facts are agreed by the parties. The statement of facts agreed and filed in the replevin case, in which the present defendants were plaintiffs, and the present plaintiff and others were defendants, which was decided by the Supreme Judicial Court in this county, is to be considered as a part of *this* statement; and either party may read or refer to the same and to the record of said cause; also the facts agreed in the case between the same parties now pending, in which the present defendants are plaintiffs.

The net proceeds of said cargo of molasses, sold at *Portland*, amounted to $9677,99

Damages given in replevin suit, were 445,83

$10,123,82

which sum of $10,123,82, the said *Vargas* has recovered of said defendants and no more; and the present action is commenced for the recovery of the balance due to him from the estate of said *Winter*, whatever that balance may be. The said *Vargas* exhibited and presented to the commissioners on said *Winter's* estate, his account and claim against the same for allowance, the balance amounting to the sum of $1975,82; but they rejected and refused to allow the same, and on the 17th day of *November*, 1836, made their report to the Judge of Probate, for the county of *Cumberland*; and the said *Vargas* afterwards on the 25th day of the same *November*, gave notice in writing at said probate office, that he was dissatisfied with the non-allowance of said claim; and that he should prosecute the same at common law. Whereupon he commenced the present action as speedily as the same could be done. The plaintiff took up the bills of exchange referred to in the replevin suit. If on the foregoing facts the Court should be of

opinion, that the action is maintainable, the defendants are to be defaulted, and judgment is to be entered for such sum as the Court shall direct; if the action is not maintainable, the plaintiff is to become nonsuit.

The *replevin suit*, referred to in the statements, is reported in 13 *Maine Rep.* 93. The abstract of the facts in the printed report was read at the argument of these cases, and was agreed to be accurate, saving that one of the counsel thought there was an error in one particular. A comparison of the abstract with the original statement of facts has proved its correctness in that respect.

These cases were argued, *April* 18, 19 and 20, 1838, by *Preble* and *Daveis,* for the administrators of *Winter,* and by *Mellen* and *Deblois,* for *Vargas.*

The counsel for the administrators, cited *Bolin* v. *Huffnagle,* 1 *Rawle,* 1; *Snee* v. *Prescott,* 1 *Atk.* 269; *Conner* v. *Henderson,* 15 *Mass. R.* 319; *Judkins* v. *Earl,* 9 *Greenl.* 7; 2 *Kent,* 551; *Case of the Constantia,* 6 *Robinson,* 321; *Wiseman* v. *Vandeputt,* 2 *Vern.* 204; *Lickbarrow* v. *Mason,* 2 *T. R.* 63, and 1 *H. Black.* 366; *Fenton* v. *Pearson,* 15 *East,* 419; *Inglis* v. *Usherwood,* 1 *East,* 515; *Oppenheim* v. *Russell,* 3 *B. & P.* 42; *Mills* v. *Ball,* 2 *B. & P.* 457; *Leeds* v. *Wright,* 3 *B. & P.* 320; *Feise* v. *Wray,* 3 *East,* 96; *Newsom* v. *Thornton,* 6 *East,* 19; *Ellis* v. *Hunt,* 3 *T. R.* 464; *Crashaw* v. *Eades,* 1 *Barn. & Cr.* 181; *Abbott on Shipping,* 216, 286, 370; *Dixon* v. *Baldwin,* 5 *East,* 175; *Richardson* v. *Goss,* 3 *B. & P.* 127; *Domat, b.* 1, *t.* 2, *s.* 6.

For *Vargas, Deblois* cited *Morton* v. *Chandler,* 6 *Greenl.* 142; *Joy* v. *Foss,* 8 *Greenl.* 455; 3 *Kent,* 220; *McDonald* v. *Webster,* 2 *Mass. R.* 498; *Case between the same parties,* 13 *Maine R.* 93.

The case was continued for advisement, and the opinion of the Court afterwards drawn up by

SHEPLEY J.——The rights of the parties in these two cases, arise out of the same transactions, and must be governed by the same rules, and they will be considered together. If the principles upon which stoppage in transitu is exercised can be ascertained, it will not be difficult to apply them to the different incidents, which

have arisen out of the transactions between *Vargas* and the intestate, and his legal representatives. It must be admitted, that there are to be found in the decided cases, expressions indicating a difference of views in the minds of different Judges. The doctrine having been introduced in the year 1690, in *England* in equity, has there been abandoned, and has passed into the common law ; and like many other rules of the common law has been modified and matured by the decisions of the tribunals, until it now stands as a prominent doctrine. But while it does so, no case has been found deciding upon the rights of parties under circumstances like those existing in these cases, and ascertaining the rights of parties after the right of stoppage has been exercised.

In the course of the voyage a part of the return cargo was lost by the perils of the sea, and the vendor could not again obtain possession of it. A partial payment may be considered as made by the intestate by the proceeds of the outward cargo, and freight, and perhaps other charges had attached to the return cargo before the right of stoppage was exercised. And the vendor, after applying the proceeds of that part of the cargo stopped, not being paid in full, claims to recover the balance. These and some other matters arising out of our own law for the settlement of insolvent estates are before the Court for decision.

The first object will be to endeavor to ascertain the principle out of which stoppage in transitu has arisen. In the cases of *Wiseman* v. *Vandeputt,* and *Snee* v. *Prescott,* decided in chancery, it is difficult to ascertain any general rule or principle upon which the decisions were made. They appear to have been decided upon what the chancellor esteemed to be equitable and just between the parties under all the circumstances. This is the view taken of *Snee* v. *Prescott,* by *Mr. Justice Buller* in his elaborate opinion in *Lickbarrow* v. *Mason,* in the house of Lords. 6 *East,* 22. It was thought to be equitable in those cases to restore, or cause to be accounted for, partial payments. When we come into the courts of law, this right of stoppage is spoken of as a " lien," as an " equitable lien," as an " equitable right ;" and the Judges soon declared it to be " a common law right." By the common law, " if a man do agree for a price of wares, he may not carry them away before he hath paid for them, if he have not a day expressly given to

him to pay for them." *Noy's* maxims, 87. "I state it as a clear proposition," says *Lord Loughborough,* in *Mason* v. *Lickbarrow,* 1 *H. Bl.* 357, "that the vendor of goods not paid for may retain the possession against the vendee, not by aid of any equity, but on grounds of law." In the case of *Palmer* v. *Hand,* 13 *Johns. R.* 484, after part of the goods had been delivered, and the buyer had pledged them to a third person, it was decided, that the seller had not lost his lien, but might still obtain and hold the whole property. So the civil law says, " *venditor pignoris loco quod vendidit, retinet, quoad emptor satisfaciat.*" *Dom. b.* 1, *t.* 2, *s.* 3, *a.* 3. And even after delivery the purchaser did not without paying or securing the price obtain by that law a perfect right of property. *Idem, a.* 1. But this rule never prevailed in the common law. *Ludlows* v. *Bowne,* 1 *Johns. R.* 18. It is probable, that stoppage in transitu as admitted in *England* arose out of this rule of the civil law, perhaps modified by the *French* law, as the learned translator of the *Napoleon* code supposes. If this were its origin, it has evidently been modified and made to conform as far as practicable to the rules of the common law ; and as it is now found in operation, it rather presents the common law as modified by the introduction of an ingredient of the civil law, than as a principle of the civil law ingrafted upon the common law. Liens at common law exist only where the party has possession of the goods. A delivery is actual or constructive, and where there has been an actual delivery to the purchaser the right of stoppage does not exist. But where there has been a constructive delivery by putting the property into the hands of a third person to be delivered to the vendee, it is allowed to exist. The common law doctrine of liens appears to have been so varied as to allow the seller, in case of the insolvency of the purchaser, before payment, to regain possession ; or in other words, to place himself in the same position with regard to the purchaser as he would have been, if he had not parted with the possession. This is believed to be the true principle of the doctrine of stoppage in transitu, as recognized in the *English* law, and an examination of some of the decided cases will tend to prove it. In *Wright* v. *Campbell,* 4 *Burr.* 2050, *Ld. Mansfield* says, " the owner retains a lien till delivery of the goods, and before they are actually sold and turned into money." By this he means a de-

livery actually to the vendee, unless the lien is divested by a sale. In *Burghall* v. *Howard*, 1 *H. Black.* 365, *note a*, the same Judge, speaking of the right of stoppage, says, " and that this was ruled, not upon principles of equity only, but the laws of property." By " the laws of property," he could have referred only to the law of lien and its effects upon the right of property. In *Mason* v. *Lick-barrow*, 1 *H. Bl.* 357, *Ld. Loughborough* says, " but the title of the vendor is never entirely divested, till the goods have come into the possession of the vendee. He has therefore a complete right for a just cause, to retract the *intended delivery* and to stop the goods in transitu." " And it will make no difference in the case, whether the right is considered as springing from the original property *not yet transferred by delivery*, or as a right to retain the things as a pledge for the price unpaid." In the same case, 2 *T. R.* 71, *Ashurst J.* says, " where delivery is to be at a distant place, as between vendor and vendee, the contract is ambulatory and *therefore* in case of insolvency of the vendee in the mean time, the vendor may stop the goods in transitu." In *Hodgson* v. *Loy*, 7 *T. R.* 440, *Kenyon* said, " it was a kind of equitable lien adopted by the law for the purposes of substantial justice." The reason why it is designated as an equitable lien may be, that it is an extension of the lien beyond the rules of the common law, allowing the party to regain his lien at law after he has parted with the possession. In *Oppenheim* v. *Russell*, 3 *B. & P.* 42, *Heath J.* says, " in the first place it is clear, I think, that the right of seizing in transitu is a common law right." " In the next place, I think it is a right arising out of the ancient power and dominion of the consignor over his property, which at the time of delivering his goods to the carrier he reserved to himself." *Rooke J.* says, " this right to stop goods in transitu, I must consider as a legal right. Our courts of common law recognize it, and they distinguish between the constructive and the actual delivery of goods." " Where there is an actual delivery the transitus is at an end, but where the delivery is constructive, there the law considers *that* as a delivery to certain purposes only, for it is a fiction of law, and that fiction of law must work equity."

The position, that it does not proceed upon the ground of rescinding the contract, also shows, that the principle upon which it

does proceed, is that of restoring the party to his lien, by placing him in the same position, as if he had never parted with the possession. In *Hodgson* v. *Loy*, *Kenyon* said, " that it did not proceed, as the plaintiff's counsel supposed, on the ground of rescinding the contract." In *Tucker* v. *Humphreys*, 4 *Bing.* 516, *Park J.* says, " not proceeding at all, on the ground of the contract being rescinded by the insolvency or bankruptcy of the consignee of the goods, but as an equitable right adopted for the purpose of substantial justice." In *Bloxam* v. *Saunders*, 4 *B. & C.* 941, *Bayley J.* speaking of the consignee, says, " he has not an indefeasible right to the *possession*, and his insolvency without payment of the price defeats that right ;" that is, it defeats the right to the possession, not to the property. The contract is regarded as existing after the exercise of the right of stoppage, and the vendee or his assigns may recover the goods upon paying the amount due. The relations of vendor and vendee are in this respect the same, as when the vendor has never parted with the possession ; and this tends to prove the principle to be as before stated. It is doubtless true, that parties may so conduct as to rescind the contract, where the right of stoppage is exercised, as well as where it is not. And in some of the cases in the books, it appears to have been the intention of the vendors to rescind. And there are expressions of the Judges to be accounted for only from the belief, that such was the intention of the parties in the case then under consideration, or from a want of a clear perception of the principle, which allowed the exercise of such a right. It would not be difficult to accumulate proofs, that the principle upon which the doctrine rests, is as before stated, but an apology is rather due for what has been offered.

Proceeding to carry out these principles, the parties are to be placed in the same condition, as nearly as may be, in which they would have been, if the vendor had never parted with the possession of the goods. And if he would repossess himself of them he must relieve them of all charges and burthens rightfully and necessarily accruing after he parted with the possession ; for the vendor cannot be allowed by his attempt to regain possession, to put the vendee in a worse position, than he would have been, had the possession remained with the vendor. And this requires him to pay the freight and intervening charges. This is in precise accordance

with the rule in the *Napoleon* code, *b.* 3, *c.* 11, *t.* 3, *a.* 579. And in note 197, to the translation, title 3, the learned translator says, " thus the doctrine of revendication in mercantile cases, first borrowed in part by the *English* law from the *French* system of jurisprudence, has been modelled in *France* to the shape, and reduced to the extent, that it had received in *England.*" Thus clearly indicating, that such was understood to be the doctrine in *England.* And *Mr. Justice Story,* in note *(f.)* 1 *Wheat.* 212, speaking of stoppage in transitu, says, the *Napoleon* code, " adopts a principle similar to that of the common law," and that it " subjects the goods sold to the right of stoppage in transitu by the vendor upon the same conditions with our own law." Upon these principles and authorities the representatives of the intestate are entitled to recover the freight and charges upon that portion of the cargo reclaimed.

If the vendor is adjudged to pay freight, he claims to set off against it a debt due from the intestate to him on the purchase of a former cargo shipped by another vessel. It is not necessary to cite authorities to shew, that the owners of a vessel have a lien on the cargo for the freight. The well known rule in mercantile law, that the ship is bound to the merchandize, and the merchandize to the ship is admitted here. This right is not destroyed, if the property be taken from the possession of the owners *in invitum,* or by operation of law. It is true, that this principle does not apply, where the owner of the vessel is carrying his own goods; but when the vendor claims to repossess himself of the goods by virtue of his original title, it is not for him at the same time to declare the title to be in the vendee for the purpose of avoiding the vendee's lien for the freight; who may well claim to retain them until he is placed in a position as favorable as he would have been, if the goods had never been delivered. And as the whole rights of the consignor depend upon an extension of his lien after he has parted with the possession, it is not for him to deny to the consignee the equitable right to set up as against him the same lien, which he would have by law, if the goods were transported for another. When the right of stoppage is exercised, the goods become in fact transported not for the benefit of the vendee, but the vendor. In this mode the just rights of the parties may be secured to them, notwithstanding what has already taken place. And as it is the only

way in which it can be done, the representatives of the consignee have a right to expect, that the Court will exact of the consignor, who asserts what is sometimes denominated an equitable right, an adherence to the rule, that he who asks equity shall do equity. It is evident, that the representatives of the intestate, or the master, who was their agent, did not intend to yield any legal right ; and by no fair construction of their acts can they be regarded as having done it. The net proceeds, by agreement of the parties, represent the cargo, and upon that cargo, they have, as before stated, an equitable lien not divested by any act of their own. Ought they, representing the general creditors to be compelled to relinquish it, and to receive in satisfaction of a claim thus secured, a debt due from the intestate's insolvent estate ? It is true, that the general policy of our law for the settlement of insolvent estates, allows balances only to be recovered, or proved, before the commissioners. But this rule does not apply to a case, where one party has a lien and can thereby compel payment without resorting to legal proceedings. Nor is there any equity on the part of the vendor in claiming such a set-off. He is allowed to have a lien on the cargo for the price, and instead of permitting it to go into the general fund and presenting his whole claim and taking his dividend, he rightfully asserts that lien, and claims only for the balance. The representatives of the intestate had at least an equitable lien upon the same cargo for the freight, and have an equitable right to assert it, and it is only after that is discharged, that the vendor has an equitable right to the cargo. There is as much equity on the one side in asserting a lien in behalf of the general creditors, as on the other in asserting it for a particular creditor. Both being equally entitled to insist upon their rights, both should be permitted to do it without any interposition by the Court.

If not allowed to set off against the freight his prior debt, the vendor claims to set off the value of that part of the cargo lost at sea. But the cases before cited for another purpose shew, that the property after the vendor parts with it, until he again resumes the possession, is regarded in law as at the risk of the vendee ; and that any loss happening in the intermediate time is the loss of the vendee. The vendor by stopping, acquires no title to that, which does

not come to his possession. Having no property in that which was lost, he has nothing to offer by virtue of it as a set-off.

The net proceeds of the outward cargo may be regarded as a partial payment, and the representatives of the vendee claim to recover it back. The vendor having the same rights as he would have, if he had not parted with the possession, there is no principle, which will allow the vendee, where the fault is his own in not paying the whole price, to recover back a partial payment. It would be as much opposed to the doctrines of the civil as the common law. In such case the earnest or partial payment is by the civil law forfeited, if the contract is never completed. *Dom. b.* 1, *t.* 2, *s.* 6, *a.* 4. And the buyer is never to elude the effect of the sale by failing to pay the price. *Idem. s.* 3, *a.* 9. If the sale be rescinded by consent of both parties, or without the fault of either; both are restored to all their rights. *Idem. s.* 12, *a.* 4, 5, 14, 15. And so is the common law. *Smith* v. *Field*, 5 *T. R.* 402; *King* v. *Price*, 2 *Chitty's R.* 416; *Hunt* v. *Silk*, 5 *East*, 449. Where the vendee is in fault and gives occasion for the vendor to take extraordinary measures to prevent a loss, no inference should be drawn, that he thereby intended to rescind the contract. This should be a matter of clear proof, especially when it is perceived to be against his interest, and when he is under no necessity to do so. All which the vendor has done in this case is to consent to a sale of the property without prejudice, and to receive the proceeds instead of the goods. Such acts, under the circumstances, can never be regarded as manifesting a disposition or intention to rescind; and the law does not rescind, or require him to rescind the contract. The representatives of the intestate cannot therefore recover back the partial payment. They will have the benefit of it as extinguishing so much of the vendor's claim.

The vendor claims to recover a balance, which will be due to him after applying the net proceeds of that part of the cargo reclaimed. When the vendee does not pay and take the goods contracted for, the vendor, upon a tender agreeably to the terms of the contract, may bring his action for not accepting and paying for the goods, and recover the damages which he has suffered. And if the vendee has refused to complete the contract, that dispenses with a tender by the vendor. Nor does the bankruptcy of the vendee re-

scind the contract, or release the vendor from performance, or excuse the vendee. *Glazebrook* v. *Woodrow,* 8 *T. R.* 366 ; *Bloxam* v. *Saunders,* 4 *B. & C.* 941 ; *Boorman* v. *Nash,* 9 *B. & C.* 145. In *Langford* v. *Tiler,* 1 *Salk.* 113, *Holt* says, " after earnest given, vendor cannot sell goods to another without a default in vendee, and therefore if vendee does not come and pay and take away the goods, the vendor ought to go and request him, and then if he does not come and pay and take away the goods in convenient time, the agreement is dissolved, and he is at liberty to sell them to any other person." When he says the agreement is dissolved, he is not to be understood as meaning, that it is rescinded, but only that it is determined ; the right of the vendee to require a further execution has ceased. Nor that it is even determined unless it be the pleasure of the vendor so to consider it. And even this right was denied by *Lord Ellenborough* in *Greaves* v. *Ashlin,* 3 *Camp.* 426. He says, " if the buyer does not carry away the goods bought, within a reasonable time, the seller may charge him ware-house room, or may bring an action for not removing them should he be prejudiced by the delay. But the buyer's neglect does not entitle the seller to put an end to the contract." By the civil law the vendor could not annul the sale for lack of payment at the time, without the intervention of the Judge. *Dom. b.* 1, *t.* 2, § 3 *a.* 8. But the right of the vendor to resell after notice to the vendee of such intention, and a reasonable time allowed to pay and take the goods, seems now to be admitted in the cases before cited of *Bloxam* v. *Saunders,* and *Boorman* v. *Nash.* If there could be no recovery after a stoppage, the effect would be to take away that right in all cases, where a large portion of the property had been lost during the voyage, or to subject the vendor to bear such loss, when the law casts it upon the vendee. If these parties are to be regarded as standing in the relation of vendor ready to deliver his goods, and vendee refusing to take them and pay the price, the vendor may upon these principles recover for the injury suffered by the non-performance of the contract. And the true relation of the parties should be regarded as that of each insisting upon all his legal rights. And that whatever arrangements have been made between them, or have been the result of the operation of law by legal process, or otherwise, their rights are not thereby

varied. Viewing these rights in that light, the vendor has not by any act manifested a disposition to rescind or to determine the contract. His interest requires him to insist upon its execution, and his acts appear to have been dictated by it. On the contrary, the representatives of the vendee have found it for the interest of the estate to refuse to pay the whole price, and take the whole property, and their acts are in accordance with this interest. They have made no effort to take up the bills or pay the price, and have resisted all efforts made to obtain it; and this cannot be regarded in any other light, than that of a refusal to comply, which relieves the vendor from the necessity of making a tender of the goods, or of the proceeds, which by agreement now represent them. But it is said that the books shew no case, where such a recovery has been had after the vendor stopped the goods and took possession of them. If it were so, that is no sufficient reason to prevent a recovery, if by the principles of law the vendor is entitled to recover. This absence of decided cases may partly be accounted for by supposing, that the vendor usually obtaining all the goods sold, finds he is fully paid; or if not, that the object of pursuing the insolvent vendee is not worth the trouble and expense. But the case of *Kymer* v. *Suercropp,* 1 *Camp.* 109, does in principle, afford a precedent for such a recovery. And *Kent* so understands it, and declares, that the vendor is thus entitled to recover. He says, " and the vendor may sue for and recover the price, notwithstanding he had actually stopped the goods *in transitu,* provided he be ready to deliver them upon payment;" 2 *Kent,* 541. But the principle does not entitle the vendor to recover on the bills; it authorizes a recovery only for damages for non-performance of the contract. There is no count in the writ claiming upon this principle, but dealing with the case, as has been the desire throughout in these cases, in such a manner as to allow each party to obtain all his just rights, the vendor should be permitted to amend by introducing such a count and have judgment upon it.