## Patten's Appeal.

*Detention or stoppage in transitu of goods sold, not a rescission of the contract.*

1. The detention, by vendors, of goods sold, on the insolvency, and assignment for benefit of creditors by the vendees, does not rescind the contract of sale: and the vendors are entitled to *pro rata* distribution out of the assigned estate.

2. Where a part of the goods had been delivered, and the balance which had been detained was sold by the vendors, who applied proceeds to the payment of the notes given upon the sale, leaving a balance still due, it was *held*, that they were entitled to a dividend upon the whole amount of their *claim* at the date of the assignment.

APPEAL from the Common Pleas of *Philadelphia*.

This was an appeal by John W. Patten from the decree of the court below confirming the report of the auditor appointed to audit, settle, and adjust the accounts of Isaac S. Waterman,

[Patten's Appeal.]

assignee of White, Stevens & Co. In 1857, White, Stevens & Co. made an assignment to Isaac S. Waterman, in trust for creditors. On the 28th of November 1858, the account of the assignee was filed, and referred by the court to Charles E. Lex, Esq., as auditor, who, after hearing the case, filed an elaborate report, disposing of all the questions submitted to him. Among the creditors of White, Stevens & Co. were the firm of S. & W. Welsh, who presented a claim of $2309.11, balance due on five notes amounting to $23,239.65, which they held under the following circumstances:—

On the 11th day of July 1857, Messrs. S. & W. Welsh sold to Messrs. White, Stevens & Co. a large quantity of sugars in hogsheads, by sample, amounting in value to the sum of $41,831.36, for which amount they took nine notes of White, Stevens & Co., for $4647.93 each at four months. The sugars, at the time of sale, were stored in the warehouse of Messrs. Welsh. Part of the sugars had been delivered, and four of the notes sold by them in the market, when the failure of Messrs. White, Stevens & Co. took place, and their assignment was made. The five notes unpaid were of the following dates and amounts:—

| | | | | | |
|---|---|---|---|---|---|
| November 9th 1857 | . | . | . | . | . $4647.93. |
| "      10th   " | . | . | . | . | .  4647.93. |
| "      14th   " | . | . | . | . | .  4647.93. |
| "      18th   " | . | . | . | . | .  4647.93. |
| "      21st   " | . | . | . | . | .  4647.93. |

Messrs. Welsh declined delivering the remainder of the sugars, in consequence of the failure and assignment, and sent to Messrs. White, Stevens & Co. the following note:—

"Philadelphia, November 3d 1857.

"Messrs. White, Stevens & Co.,—Gentlemen: We hereby notify you that we will retain the balance of sugar per D. G. Wilson, as security for the notes described below, amounting to $23,239.64. Our receipt for these said notes which, when paid, will be in full for sugar. Therefore, if the notes are paid at maturity, we will deliver the sugar; but if unpaid, we will then sell the sugar, and apply the proceeds towards the payment of said notes.                "Yours, respectfully,
                "(Signed)             "SAMUEL & W. WELSH.

| | | | | | | |
|---|---|---|---|---|---|---|
| "Your note due November 9th | . | . | . | $4647.93 |
| "      "         "    10th | . | . | . |  4647.93 |
| "      "         "    14th | . | . | . |  4647.93 |
| "      "         "    18th | . | . | . |  4647.93 |
| "      "         "    21st | . | . | . |  4647.93 |

                                "$23,239.65."

They subsequently sold them in the market, realizing therefrom the net sum of $21,026.28. The testimony given in the case of White against Welsh, decided by the Supreme Court, and reported in 2 Wright 396, was considered in evidence before the auditor. From the testimony of Thomas A. Newhall, a witness examined upon the trial, who purchased from Messrs. S. & W. Welsh the sugars they had thus retained, the terms upon which the sale was made was a credit of six months, interest at 9 per cent, and, by statement of Messrs. S. & W. Welsh, entitled in the paper-book, "Statement of S. & W. Welsh, not communicated till trial," but offered in evidence on the trial by the plaintiffs; the balance due Messrs. S. & W. Welsh, November 14th 1859, was $2394.11.

On he 14th of November, when the sugar was sold to pay the notes then due, it was expressly stipulated with the purchasers, that if the notes of the 18th and 21st were paid, the sale of that proportion should be cancelled.

The Messrs. Welsh claimed that a dividend should be allowed them on the full amount of the five notes held by them, amounting to $23,239.65, less $20,845.53 net received on account; alleging that the sugars were held as collateral, and that, according to the decisions in Pennsylvania, the dividend to which the creditor is entitled is the amount of indebtedness at the time the assignment was made, without regard to any collaterals he may hold, or the proceeds arising therefrom that may come into his hands.

On the other hand, it was argued that the retention of the sugars, and stoppage *in transitu* by the Messrs. Welsh, was a rescission of the contract, and an election on their part to take the sugars, and look to them alone for payment of the remaining indebtedness; that having sold some of the notes, they were not entitled to a dividend until the full amount, as received by them from the sale of the sugars, was brought into a common fund with the rest of the assigned estate; and that, under all circumstances, they were only entitled to a dividend on the balance remaining due, and not on the full amount of the notes.

The auditor reported in favour of the claim, and allowed a dividend on $2394.11, with interest to June 14th 1862, the usual time of confirming auditors' reports under the rules of court.

To this report exceptions were filed by John C. Bullitt, attorney for other creditors of White, Stevens & Co., which, on hearing, were dismissed by the court, and the report confirmed. This appeal was then taken, as above stated, by John W. Patten, a creditor of White, Stevens & Co., who assigned for error the confirmation of the report of the auditor.

*John C. Bullitt*, for appellant.—The stoppage *in transitu* or

retainer of the sugar, taken together with the subsequent resale, the time of that resale, and the manner in which it was conducted, was a rescission of the contract of sale, and consequently Messrs. Welsh have no right to recover on notes given as the consideration of the contract; or if not a rescission of the whole contract, then a rescission *pro tanto;* which, as the proportion of sugar retained to the whole was much greater than that of the notes retained to the original number ($\frac{3}{4}$ths to $\frac{5}{9}$ths), would equally preclude them from recovering on the notes in question.

The exercise of the right of stoppage *in transitu* by a vendor is in itself a rescission of the contract: Ross on Contract of Sale, pp. 248, 249, 252; Litt *v.* Cowley, 7 Taunton 170; Wentworth *v.* Outhwaite, 10 M. & W. 451; 10 B. & C. 99, 632. Messrs. Welsh had the right to rescind their contract with White, Stevens & Co., and they exercised that right.

The insolvency of White, Stevens & Co. did not in itself operate as a rescission, but it gave to Messrs. Welsh the right to rescind if they saw fit: 2 Parsons on Contracts, p. 191; Addison on Contracts, p. 48–57.

The letter of Messrs. Welsh, dated November 3d 1857, or about one month subsequent to the failure of White, Stevens & Co., indicated no intention on their part to exercise this right; and their only reply to the demand for the sugars made by Mr. Waterman, December 3d 1857, was a reference to that communication. There was no direct avowal by Messrs. Welsh of any intention to rescind the contract, but the contrary. It was unnecessary for them to make an express declaration of intention in order to effect a rescission of the contract. This could be done as effectually by the course of conduct they chose to adopt, and it was done by the resale to T. A. Newhall & Co., on November 24th 1857. This resale was made before all the notes in question had matured, and before Mr. Waterman had made the demand, by their answer to which Messrs. Welsh professed to still retain the sugar, subject to his order, if the notes were paid at maturity. In making it, Messrs. Welsh treated the sugar as absolutely their own, and acted without regard to the duties which the law imposes on those who deal with the property of others. They treated the contract as rescinded, and cannot, therefore, now claim any benefit under it.

If it was the intention of Messrs. Welsh to sell the sugar as the property of White, Stevens & Co., it was their duty to notify them of the time when and the place where the resale was to be made; and a resale without such notice is in effect a rescission: 2 Kent 395, 480; Sands *v.* Taylor, 5 Johns. 395; Girard *v.* Taggart, 5 S. & R. 19; and Adams *v.* Minnich, therein cited. Also McEachron *v.* Randles, 34 Barbour's S. C. R. 301.

[Patten's Appeal.]

Where property is pledged as security for a debt, the pawnee cannot sell it without notice to the debtor of the time and place of sale: Tucker v. Wilson, 1 P. Wms. 261; Lockwood v. Ewer, 9 Mod. 275; De Lisle v. Priestman, 1 P. A. Browne 176; Stearns v. Marsh, 4 Denio 227.

It is equally material for the interests of a vendee "who is to be charged with any deficiency that may arise upon a resale, that he should have notice of the time and place of the resale, and none the less reasonable and just that he should have such notice."

2. If Messrs. Welsh are entitled to any dividend, it must be calculated upon the amount actually due at the time when the dividend is ascertained, or, in other words, upon the $1199.52, which, with interest from November 14th 1857, is all they can claim as due.

The rule in bankruptcy adopted in England was, that the creditor was entitled to claim upon the amount due to him at the time he proved his debt: Royal Bank of Scotland, 2 Rose's Cases in Bankruptcy, p. 202 and note; s. c., 19 Vesey, Jr., p. 311; Ex parte Wyldman, 2 Vesey 114; Ex parte Bloxham, 5 Vesey, Jr., 448; Ex parte Leers, 6 Id. 645. The proof of the claim in bankruptcy corresponds in time with the proof of the claim before the auditor, in cases of assignments in this state. See also Bank of Pennsylvania v. McCalmont, 4 Rawle 315, and Perritt v. Pittfield, 5 Rawle 166.

So far as the rights of the other creditors of White, Stevens & Co. are concerned, the sugar retained was precisely in the position of the estate of some other person liable for the whole amount of the five notes. By the resale of it, Messrs. Welsh were paid a dividend of more than ninety per cent. of the debt due to them. They cannot, therefore, now claim a dividend on more than is actually due.

The rule contended for is that which the good sense of this community at a very early period settled upon; and from the absence of any reference to the subject in the reports, it may be fairly inferred that it was acted upon and unquestioned until the decision of the very recent case of Miller's Appeal, 11 Casey 481. But the opinion in this case expresses no intention to overrule or even qualify the rule laid down in the cases of Bank of Pennsylvania v. McCalmont, and Perritt v. Pittfield.

The doctrine of Miller's Appeal is one which cannot be readily admitted. A general assignment for the benefit of creditors does not possess that certainty either as to the parties for whom the benefit is meant, or as to the interests they are respectively to take to create an express trust in the technical sense: Steere v. Steere, 5 Johns. Ch. 1; Knight v. Boughton, 11 Cl. & Fin. 513; Mercer v. Stark, 1 Sur. & Marsh's Ch. 479; Reeves v.

Baker, 18 Jurist 588; Garrard *v.* Lauderdale, 3 Sim. 1; 20 Myl. & K. 492; 6 M. Gr. & Scott 136; Brooks *v.* Marbury, 11 Wheat. 78; 2 Gallison 557; Vandyke *v.* Christ, 7 W. & S. 374; Twelves *v.* Williams, 3 Wh. 485.

It is of course admitted that, under the common and statute law of this state, an assignee under such an assignment, is bound to apply the property assigned to him to the payment of the debts of the assignor, and that the creditors, by taking the proper steps, can compel him to do so; but that does not constitute him an express trustee in the technical sense for each particular creditor. An executor upon whom like duties are imposed, and who is subject to like control, is not such a trustee, and "it is not until the debts and legacies are paid, and the residue ascertained and appropriated," "that his representative character ceases," and he becomes "subject to the ordinary rules respecting trust property." See Adams on Equity, p. 251, and authorities in note. A purchaser from an assignee is not affected with notice of the trust, and is not bound to see to the application of the purchase-money, as he would be in case of a regular trust. The assignee can sustain or defend a suit in equity, without joining the creditors as parties. His possession is adverse to that of the creditors, and therefore lapse of time will bar his liability. But no time bars the liability of an express trustee: Beckford *v.* Wade, 17 Ves. 99; Wederburn *v.* Wederburn, 2 K. 722; Drysdale's Appeal, 2 Harris 531; Kerr *v.* Webb, 7 Legal Int. 7; Ingraham *v.* Cox, 1 Pars. 70, 487.

In the case of an express trust, the court will make no decree affecting the rights and interests of an absent *cestui que trust;* but the right of a creditor under an assignment is not treated as existing until he comes forward, establishes and enforces it in the manner provided by our several Acts of Assembly: Rush *et al. v.* Good, 14 S. & R. 226; and the power exercised by the court in regulating the amounts paid, so that no creditor shall, in any event, receive more than the amount of the debt due to him, seems equally inconsistent with the doctrine of a vested ownership in a particular distributive share, from the time when the assignment is made.

Taking into consideration, then, the inconsistencies and confusion in which the admission of this doctrine must involve the whole law connected with the subject of assignments for the benefit of creditors, together with the utter absence of any authority to sustain it, and the positive authority of long-established usage, and the cases first cited to the contrary, it is respectfully urged that the case of Miller's Appeal cannot be regarded as furnishing the proper rule in cases of this character. The position of an assignee in trust for the benefit of creditors, seems to be that of a mortgagee in trust for the benefit of creditors.

[Patten's Appeal.]

The assignee is the legal owner of the assigned property. The equity of redemption remains in the assignor. A creditor has merely a right to have his debt paid out of the proceeds of the assigned estate *pro rata* with the other creditors. When his debt is extinguished by payment, either by the debtor himself or from the proceeds of any securities which he may hold, his right to have satisfaction out of the assigned property ceases. What difference can there be between the extinction of the whole of a debt and a part of it, as regards the right of that which is extinguished to participate in the proceeds of the assigned estate ?

The decision in Miller's Appeal not only ignores that which would seem to be the true equity of allowing to those creditors who have but one security the benefit of the double security, which may be held by another creditor, but actually works out the gross injustice of giving to one creditor the whole of his debt, while another may only get a small fraction of the amount due to him.

It is submitted that Miller's Appeal was decided under a misapprehension on the part of the court as to the principle determined in Morris *v.* Olwine, 10 Harris 441, and Keim's Appeal, 3 Casey 42, that it is not in accordance with the law, and is not authority in this case.

The propositions relied upon to sustain the appeal, are, first, that S. & W. Welsh rescinded the contract between them and White, Stevens & Co., and therefore were not entitled to claim as creditors any portion of the funds in the hands of the assignee; second, that if entitled to anything, they can only get a dividend *pro rata* with the other creditors upon the sum of $1199.52, the balance of their debt unsatisfied by a sale of the sugars. That the auditor erred in awarding to them the whole of the balance claimed by them, when the funds of the estate were insufficient to pay all the debts in full.

*Fallon* and *Serrill*, for appellees.—The first proposition submitted by plaintiff's counsel cannot be affirmed without overruling the decision of this court in the case of White *v.* Welsh, reported in 2 Wright 396. The same arguments, supported by the same authorities as are now cited, were then submitted to this court by the counsel now representing this appellant. There is no such thing known to the law as the right to rescind part of a contract. A contract can never "be rescinded without mutual consent, if circumstances be so altered by a part execution that the parties cannot be put in *statu quo ;* "for, if it be rescinded at all, it must be rescinded *in toto :*" 2 Kent 480. We submit, that though there was originally a conflict of decision and opinion on the subject, there is no conflict in the modern decisions. The right of stoppage *in transitu,* and the analogous right of retain-

ing possession of undelivered goods in case of the open insolvency of vendee, is now well established to be an incident of every contract of bargain and sale; the promise of the vendee to pay at a future day involving on his part an engagement that he would remain and then be able to pay, which engagement is broken when he avows himself insolvent, and unable to pay his debts generally; hence the right of vendor, under the original contract, to stop executing it, and retain possession. The authorities cited in support of this proposition in the argument, as reported in the case of White *v.* Welsh, 2 Wright 396, would, we submit, establish it, were it necessary, in view of the fact that this court have there so decided it.

The second proposition cannot, as is admitted in the appellant's argument, be answered in his favour without overruling the recent well-considered case of Miller's Appeal, 11 Casey 481; but in point of fact, the case of Keim's Appeal, 3 Id. 42, is equally to the point as Miller's Appeal, and the same principle was acted on in Morris *v.* Olwine, 10 Harris 441.

The assertion and assumption that " the rule contended for by the appellant is that which the good sense of this community at a very early period settled upon; and from the absence of any reference to the subject in the reports, it may be fairly inferred that it was acted upon and unquestioned until the decision of the very recent case of Miller's Appeal," we respectfully submit are purely gratuitous, and that the very contrary is the legitimate deduction to be made from the admitted entire absence of any contrary decision or dictum in the reports.

It may also be fairly assumed that if the practice and doctrine of our sister states, or any of them, were different from what it is in Pennsylvania, as decided in Miller's Appeal, and the other cases referred to, the learned counsel for the appellant could and would show it by reference to adjudicated cases.

The opinion of the court was delivered, May 6th 1863, by

STRONG, J.—The first position taken by the appellant is, that S. & W. Welsh are not creditors of White, Stevens & Co., the assignors. It is insisted that their detention of the sugars sold, on the insolvency of the vendees before delivery, was a rescission of the contract of sale, and that consequently the notes given for the price are not recoverable.

This position is not maintainable. Notwithstanding the doubts expressed in some of the older cases, the modern decisions clearly show that neither the stoppage of goods sold while *in transitu,* nor the exercise of the analogous right of detention before any *transitus* has commenced, operates as a rescission of the contract of sale. And in this the elementary writers generally agree. Thus, in 2 Kent's Com. 541, it is said the right of stoppage does

not proceed upon the ground of rescinding the contract, but as a case of equitable lien. It assumes its existence and continuance. Story on Sales, § 320, asserts the same thing. So does Brown on Sales 638, and Whittaker on Stoppage in Transitu 149.

And it must be so, for the cases agree that the vendee may, at any reasonable time after the vendor has stopped the goods, enforce his claim to them by the payment of the purchase-money, according to the terms of the original contract, and the vendor may also, notwithstanding his exercise of the right of stoppage, maintain an action against the vendee for goods bargained and sold, provided he be ready and willing to surrender the goods, according to the terms of the original contract: Lickbarrow v. Mason, 6 East 27 ; Newhall v. Dargas, 15 Maine 314, where the decisions are reviewed at length ; Kymer v. Suwercropp, 1 Camp. 109. We need not, however, discuss this general principle at length, for, even if it be in doubt, it is plain that the stoppage in this case could not work a rescission of the sale. Part of the sugars had been delivered to White, Stevens & Co., and had been by them resold. It was therefore impossible to put the parties into their original position. In 2 Kent 480, it is said that "a contract cannot be rescinded without mutual consent, if circumstances be so altered by a part execution that the parties cannot be put in *statu quo ;* for if it be rescinded at all, it must be rescinded *in toto.*" When, therefore, the Messrs. Welsh detained that part of the sugars which had not been delivered at the time of the failure of the vendees, they did not thereby annul the sale, but they held the goods as a security for the payment of the stipulated price. Of this they gave notice to the vendees, expressing their willingness to deliver the sugar detained if the notes given for the price should be paid at maturity, and avowing their intention, if the notes were not paid, to sell the sugar, and apply the proceeds to the payment of the notes. There was then nothing in intention or in act to rescind the sale. Of course the subsequent sale of the part detained could work no such effect. If the sale was wrongful, a special action on the case might have been brought against the vendors, and that is all: Bloxam v. Sanders, 4 B. & C. 941. In 1 Camp. 109, and 15 Maine 314, it was held that a vendor may, after notice, and a reasonable time to allow the vendee to pay for the goods, sell them, and apply the proceeds to the payment of the price ; and should a balance still remain unpaid, the vendor may recover it from the vendee. And it is impossible to hold that a resale of part of a lot of goods by a vendor, after a vendee has obtained the other part, even if wrongful, places the parties in the same situation in which they would have been had the first sale never been made. It is enough, however, for this case that the question has been decided in its application to the facts before us. It was ruled in

[Patten's Appeal.]

White *v.* Welsh, 2 Wright 396, and it can no longer be considered in doubt.

The next position of the appellant is, that if the appellees are creditors, and entitled to a dividend with other creditors, they can only claim a dividend upon the balance of their debt unsatisfied by the sale of the sugar. When the assignment was made there was due from the assignors to S. & W. Welsh the sum of $23,420.39. Of this, $21,026.28 was paid out of the proceeds of sale of that part of the sugar which was retained after the failure of the assignors, leaving unpaid the sum of $2394.11. The law, applicable to such a state of facts, was settled in Keim's Appeal, 3 Casey 42, and it was reaffirmed, after full consideration, in Miller's Appeal, 11 Id. 481. Notwithstanding the doubts expressed by the learned counsel for the appellant in this case, we discover no reason for abandoning the opinions we expressed in Miller's Appeal. If the beneficial ownership of property assigned in trust for creditors is not in the creditors for whose benefit the trust was made, it can be nowhere, for clearly it *is* not in the assignor, nor is it in the trustee. Surely it cannot be maintained that when an assignment has been made in trust for creditors, it does not operate as much for the benefit of a creditor who holds a collateral security for the debt due him, as for the benefit of a creditor who holds no collateral. Yet it does not, if the doctrine contended for by the appellant be true. The appellees were the holders of collaterals. When the assignment was made they had two securities, the trust created by it and their lien upon the sugar. Had they retained the sugar until the present time, no one would doubt their title to a dividend out of the trust fund upon the whole amount of the debt due them. What difference can it make that they have made use of the collateral, that they have sold the sugar, and applied the price in reduction of the debt? It has not injured the appellant. It may have benefited him, and in truth it has. Upon what principle can he claim, as a right, to make use of the lien upon the sugar for his benefit until the lien-creditors are paid in full? We are unable to discover any such sound principle.

Reason and authority, then, concur in supporting the decree made in the court below.

> The appeal of John W. Patten from the decree of the Court of Common Pleas is dismissed, with costs.