# PENNSYLVANIA R. CO. v. AMER. OIL WORKS, LIM.

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILADEL-
PHIA COUNTY.

Argued April 10, 1889—Decided May 20, 1889.
[To be reported.]

1. The exercise by a vendor of goods of the right of stoppage in transitu is not a rescission of the contract of sale, but a resumption of possession which will enable him to insist upon the vendor's lien which he had waived by his delivery to the carrier.
2. In such case, the carrier, as against the consignor, may claim a lien for his charges and expenses upon that consignment only, but not for an unpaid balance due from the consignee upon former consignments from the same vendor.
(*a*) A clause in a bill of lading provided: "Said merchandise may be retained for all arrearages of freight and charges due thereon and also on any other goods by the same consignee or owner; and such arrearages and the freight and charges on said goods and merchandise shall be a lien thereon until the same shall have been paid."
3. In such case, if the consignor, stopping the merchandise in transitu, was not a debtor for charges and expenses on previous consignments, the carrier's lien did not extend beyond the charges applicable to the goods stopped, and, on payment or tender thereof, the consignor was entitled to a delivery of the goods to him.

Before PAXSON, C. J., GREEN. CLARK, WILLIAMS and Mc-
COLLUM, JJ.

No. 235 January Term 1889, Sup. Ct.; court below, No. 133 March Term 1888, C. P. No. 3.

On October 15, 1888, in an action by the American Oil Works, Limited, against the Pennsylvania Railroad Company, the following case was stated for the judgment of the court, with the right to each party to sue out a writ of error thereto:

The plaintiff is an owner and vendor of oil at Titusville, Pa., and for some time prior to January 1, 1888, had sold and delivered to the Philadelphia Lubric Company, a refiner of oil, large quantities of oil, which were delivered to the defendant in cars. These were shipped by the plaintiff and carried by the defend-

ant, under bills of lading containing, inter alia, the following condition and agreement:

" 1. The owner or consignee shall pay freight and charges thereon at specified rates at time of delivery as the same from time to time arrives. Said merchandise may be retained for all arrearages of freight and charges due thereon and also on any other goods by the same consignee or owner; and such arrearages and the freight and charges on said goods and merchandise shall be a lien thereon until the same shall have been paid."

On January 4, 1888, there was shipped and delivered by the plaintiff to the defendant ninety-two barrels of oil in car No. 1195; on January 10, 1888, two hundred and one barrels in cars 1284 and 810; and on January 13, 1888, ninety barrels in car 1125. The value of the said oil was $1026.79, and the amount due for freight and charges thereon was $197.35. All of said shipments were made and received under the bills of lading containing the aforesaid condition and agreement. On January 23, 1888, before the actual delivery in fact to the consignee, the plaintiff exercised its right to stop said oil in transit, on account of the insolvency of the consignee, the Philadelphia Lubric Company.

On January 1, 1888, the Philadelphia Lubric Company, the consignee, was indebted to the railroad company, defendant, upon a running book account for freight and charges due upon merchandise theretofore consigned by various parties, in addition to the plaintiff, under the terms of the aforesaid bill of lading, and which merchandise had been delivered to the consignee by the railroad company without exacting the payment of the freight and charges due thereon, and without the knowledge of the plaintiff in this case.

Prior to January 1st, 1888, the plaintiff had made three shipments of oil to the same consignee, which had been delivered and on which the freight and charges were unpaid. The indebtedness on these three shipments was $114.30, and the indebtedness on the shipments from others was greater than the value of the oil which is the subject of this suit.

When the plaintiff demanded the oil in suit, the defendant claimed that the sum of $197.35, due on the shipments of January 4th, 10th, and 13th, now in suit, as well as all the above-mentioned indebtedness, to an amount greater than the

value of the oil, was a lien thereon, and under this claim retained the oil. The plaintiff averred a willingness to pay the sum due upon the shipments in suit and made tender thereof.

If the court shall be of opinion that the defendant has a lien for the sum of the total indebtedness, then a judgment to be entered in its favor; if it shall be of opinion that the defendant has a lien only for the freight charges due on the three shipments of oil which are the subject of this suit, then a judgment to be entered in favor of the plaintiff for the sum of $829.44, with interest from February 4, 1888, the date of the institution of this suit; and if it shall be of opinion that the defendant has a lien for the freight and charges due upon the three shipments made prior to January 1, 1888, as well as upon those in suit, then a judgment to be entered in favor of the plaintiff for the sum of $715.44, with interest from February 4, 1888.

The cause having been argued, the court, FINLETTER, P. J., on December 22, 1888, filed the opinion and judgment following:

If it be conceded that a common carrier can affect the shipper with special contracts, by simply printing them upon the bills of lading, it cannot well be questioned that such contracts are to a certain sense compulsory. The shipper is not in a condition to dispute the terms; to do so would result in delay and perhaps litigation. In this event, ordinary trade and commerce would suffer. The least that ought to be done, under such an involuntary contract, would be to give the consignor upon whom it is imposed the benefit of a most liberal construction, and hold the common carrier to the converse.

The contract in this case is as follows: "The owner or consignee shall pay freight and charges thereon, etc. . . . . . Said merchandise may be retained for all arrearages of freight and charges due thereon, and also on any other goods by the same consignee or owner; and such arrearages and the freight and charges on said goods and merchandise shall be a lien thereon until the same shall have been paid." The words, "the same consignee or owner" should, under this contract, be considered as meaning simply the owner. In ordinary business the consignee is the owner, and the shipper under such circum-

Opinion of Court below.

stances assumes no responsibility. If any other construction be given to these words, the owner would become responsible for the debts of one to whom he had consigned the goods on commission or for storage. If the railroad company intended this contract to reach such special cases, they should have set them forth specifically, so that the responsibility of the owner might be apparent.

If this construction be erroneous, still, to make the goods liable, there must be the relation of owner or consignee, to connect them with the antecedent freights. If there be no consignee of the shipment, it is chargeable only for freights due by the owner, who may be the shipper, or any other person who has the right to receive them. In the present case, the goods were stopped in transit by the consignor, who then became the owner, the contract of sale being thereby rescinded. The purchaser no longer had any rights in or over the goods, and ceased to be the consignee. The shipment then became liable only for the debts of the owner.

There is, however, a broader view to take of this contract. From the earliest times, common carriers have had special privileges and responsibilities. They facilitate the intercourse of social life, and have become necessities of trade and commerce. They are servants of the public, and their duties are of a public nature. They are compelled to carry every one, and for every one, and to do so without distinction on account of person, or in price. They have the right to exact reasonable compensation, and make reasonable rules for themselves and those who deal with them. As they have a lien upon the goods carried for the freight, it would be an unreasonable privilege to give them also a lien upon such goods, for the debts of a party over whom the owner had no control. They would thus have an advantage which no one else could have, and that in itself would be unreasonable. Contracts of this character restrict the free intercourse of the people, and fetter business generally. There can be no reason or justice in making those who are compelled to do business with common carriers, insurers of their bad debts, and such is simply the effect of the contract in this case.

These views are in accord with the authorities. " A common carrier is bound to carry goods for a reasonable compen-

sation.   To permit him to retain the consignor's goods for the debt of another is in derogation of this rule, and such a right has never been recognized by the courts of justice." When the carrier received goods under the following condition : "All goods, from whomsoever received or to whomsoever belonging, shall be subject to a lien, not only for the freight of the particular goods, but also for any general balance that may be due from the person to whom they were consigned," it was held that this clause was inoperative against the consignor, as he owed the carrier nothing, and his right of stoppage in transitu was superior to the carrier's lien.

As common carriers have become more powerful and more necessary, they have sought in every way to evade the wise restrictions of the law.   Hence they have introduced compulsory contracts on bills of lading and passenger tickets, rebates and discriminations, by which they have injuriously interfered with business of all kinds.   Such efforts have always been rebuked by the courts.

The contract in this case is inoperative, and judgment is entered for the plaintiff for $829.44.

Judgment having been entered in favor of the plaintiff for $829.44. the defendant took this writ, specifying that the court erred in not entering judgment for the defendant on the case stated, and in entering judgment for the plaintiff.

*Mr. David W. Sellers,* for the plaintiff in error :

1. As a matter of interpretation, is it true that the words in the bill of lading, "owner or consignee," are to be read as though the bill had in it the word, "owner," alone, as held by the court?   There are at least two persons, possessed of different rights, who have contractual relation to a bill of lading, to wit, the consignor and the consignee.   The right to stop in transit is a right existing in the consignor.   The right of the consignee, from the time the carrier receives the freight, is exclusive.   The relation of the carrier to each is determined by the bill of lading.

2. It is because the consignor has relation to the freight by bill of lading, that he may indorse the bill and control the delivery by the carrier: North Penn. R. Co. v. Bank, 123 U.

S. 727; Wernwag v. Railroad Co., 117 Pa. 46. And it is because the consignee has relation to the conditions in the bill that he is bound by it. Thus, in Elkins v. Transportation Co., 81* Pa. 320, where a consignee sued on a bill of lading issued in Illinois, the trial judge instructed the jury: " It is of no consequence what Elkins (the consignee) understood in regard to the limitation of the (carrier's) responsibility. He was the consignee. He was here, whereas the shipment was made in Illinois; and the question is, what the shipper who made the contract understood and agreed to. If the design was by writing in the bill of lading to limit the responsibility of the carrier, and if that was so understood and agreed to by the shippers who made the contract, then Elkins (the consignee) is bound." This was affirmed.

3. It is suggested that the clause in this bill means distinctly to bind the owner who may not be the consignee, and to bind the consignee who may be different from the owner; that it means, what it says, that if there be arrearages due by the same consignee, the merchandise may be retained; and the plaintiff in this case, in doing business with this consignee, expressly agreed as owner that " said merchandise may be retained for all arrearages due thereon and also on any other goods by the same consignee." His legal right to stop in transit before the possession came to the consignee, was waived or subordinated to arrears, as it was to the freight due thereon. His right was wholly under his control. No public policy prevented its waiver. If he was willing to consign goods under this bill of lading without inquiry, if there were arrears, the carrier is not to lose by that. The decision of the court below in its interpretation gives the carrier no additional lien. It is no better with the clause in the bill than without it.

4. Without any agreement the carrier had a lien for the whole freight on each and every part of the shipment. In Steinman v. Wilkins, 7 W. & S. 466, wherein the lien of a warehouseman was considered, C. J. GIBSON remarks: " What rule forbids the lien of a warehouseman? . . . . . Now, a sale of warehouse room presents a case which is bound by no pre-established rule or analogy, and on the ground of principle, it is not easy to discover why the warehouseman should not have the same lien for the price of future delivery and intermediate

care that a carrier has. The one delivers at a different time, the other at a different place; the one after a custody in a warehouse, the other in a vehicle, and that is all the difference. . . . . I take it, then, that in regard to lien, a warehouse-man stands on a footing with a carrier, whom in this country he closely resembles. Now it is clear that where the ownership is entire in the consignee, or a purchaser from him, each parcel of goods is bound, not only for its particular proportion, but for the whole, provided the whole has been carried under one contract." In Fuller v. Bradley, 25 Pa. 120, where one, found to be a carrier by water, received and delivered cargo on the route, it was held that the articles remaining on board at the end were liable for the whole amount of freight in arrear.

5. So in 1882 the Common Pleas No. 1, held that a carrier, who has delivered part of the consignment, has a lien upon the remainder for the freight due upon the whole: Phil. & R. R. Co. v. Dows, 15 Phila. 101. It was therefore unnecessary to have any agreement relative to freight, if the consignor was not bound by the bill of lading, as to different shipments to the same consignee. The plaintiff consignor had shipped three times before the last shipment to the Philadelphia Lubric Company, as consignee. It knew that the carrier under such a shipment could properly regard the consignee as owner, from the time the oil passed into its custody as carrier. The plaintiff consignor agreed with the carrier that this shipment should be held for arrears. It could not have meant arrears due by the consignor, as owner, for if the consignee had remained solvent, the goods were his, and could not be taken after delivery to the carrier for another's debt. Both parties must have intended and so understood that if the consignee was in arrear, the oil could be retained by the carrier.

*Mr. Charles A. Chase* (with him *Mr. Thomas W. Barlow* and *Mr. Charles C. Lister*), for the defendant in error:

1. The clause quoted from the bill of lading is clearly contrary to public policy and therefore void.

(*a*) The common law lien which a common carrier acquires over property entrusted to him is a special lien upon the particular cargo for the particular freight earned in relation to that cargo, and for nothing else. Common carriers owe well

defined duties to the public, and in return are entitled to certain rights and immunities, one of which is their common law lien upon the articles carried by them, to secure the payment of their freight. When, however, common carriers desire to claim other and higher privileges than those accorded to them by law, they must establish their right beyond question, and the law will regard such a claim with the utmost jealousy and suspicion. "Restrictions of common law liabilities of carriers must be taken most strongly against them, and the language in the contract must be unequivocal and susceptible of no other reasonable interpretation:" Hooper v. Wells, Fargo & Co., 27 Cal. 11 (85 Am. Dec. 211); 2 Redfield on Railways, 171, n.; United States v. Kimbal, 13 Wall. 636; Camden etc. R. Co. v. Baldauf, 16 Pa. 67.

(b) The liens which railways have claimed for goods carried are of two kinds; (1), special liens against a particular cargo for the freight earned thereon; and (2), general liens against the property in their hands for a balance due by the owner of the goods. It seems, by a careful reference to the leading authorities and text writers upon this subject, that a lien for a general balance may possibly be sustained against the party owing the balance, where he has entered into a special agreement allowing the same to be done, but it has never been decided by a court of justice down to the present time, that such a lien could be sustained and enforced against the true owner of the goods for the debt of another over whom he has no control, when that owner owes the carrier nothing: Oppenheim v. Russell, 3 B. & P. 42; Wright v. Snell, 5 B. & A. 355; Leukhard v. Cooper, 3 Bing. N. C. 99; Angell on Carriers, 4th ed., 310; Michigan Cent. R. Co. v. Manufacturing Co., 16 Wall. 318.

2. The language of the clause itself does not bear the construction applied to it by the defendant.

(a) The language is, "said merchandise may be retained for all arrearages of freight and charges due thereon and also on any other goods by the same consignee or owner." Standing alone in the clause, the words, "by the same consignee or owner," are elliptical; they are absurd, and mean nothing. The words necessary to complete the sense must be supplied, to wit, "by the same consignee or owner, as the one who right-

fully claims the goods." Therefore, the meaning of the clause is, that the railroad company shall have the right to retain the merchandise as against the one entitled to them, for any arrearages due by him.

(*b*) Moreover, the defendant company expressly waived the benefit of the condition under which it claims. It is stipulated that " the owner or consignee shall pay freight on the goods at the time of delivery, as the same from time to time arrives." This would lead the consignor to believe that the railroad company intended to collect their freight as they delivered their goods. On the contrary, the railroad company made another contract with the consignee, of which the consignor was ignorant. It changed the time of the payment of the freight, by delivering the goods without exacting the payment of the same, and charged it to the consignee in a running book account, a fact of which the consignor was ignorant.

OPINION, MR. JUSTICE WILLIAMS:

A vendor of goods has a right to retain them in his own possession until the price has been paid. If he waives this right, and sells upon credit, it is an implied condition of such sale that the buyer shall continue in good credit until the goods come into his actual possession. When that happens the lien of the vendor is gone, and he must depend upon the ultimate solvency of his customer at the expiration of the term of credit. If, while the goods are in the hands of the carrier, in transit, or in store at the end of the journey, with no intervening right in the way, the buyer becomes insolvent, the implied condition on which credit was given is broken, and the vendor may resume the possession of the goods. The exercise of this right of stoppage is not a rescission of the contract of sale, as the court below seemed to think, but a resumption of possession which enables the seller to insist on his lien as a vendor which he had waived by the delivery to the carrier: Patten's Appeal, 45 Pa. 151 , 2 Benj. on Sales, § 1295. The parties are then in the same position as before the seller parted with the possession by delivery to the carrier.

So far the law is well settled. The seller having exercised his right of stoppage as against the buyer, has then to consider his relation to the carrier. The goods having been delivered

into the possession of the carrier, he may retain them by virtue of his lien for carriage, until his charges and expenses are paid. As between the carrier and the consignee who is owner, we see no reason why this lien may not be extended by a contract to cover a general balance due by the consignee for the carriage of other goods. There would be no injustice or oppression in asking the consignee to pay what he honestly owed, before allowing him to remove the goods from the possession of his creditor, whether that creditor was a natural or an artificial person.

But that question is not raised in this case, for the goods never came to the end of the journey where the rights of the consignee and the carrier could be adjusted. The seller inter-vened and exercised his right of stoppage. This restored the possession to him, subject to the charges of the carrier for his services and expenses between the consignment and the stop-page. For these charges, the carrier had a lien which was not divested by the stoppage, and which could be asserted against the seller notwithstanding his exercise of that right: Hays v. Mouille, 14 Pa. 48. But as between the carrier and the seller, there was no balance of accounts for carriage of former consignments, for the delivery of the goods to the con-signee without payment of the freight was a voluntary surrender of the lien upon them, and the security which the lien afforded. The carrier by such delivery gave credit to the consignee, and undertook to look to his solvency and integrity. The former bills were therefore paid so far as the consignor was concerned, and the carrier had no legal or moral ground for calling upon him to pay any balances due upon them.

The clause in the bill of lading which has been brought to our attention, and on which the plaintiff in error relies, is not according to its own terms applicable to a case like the present one. That clause provides that the consignee or owner shall pay the freight on the goods consigned to him at the time of their delivery, and that the goods may be retained by the carrier for the charges due thereon, and also for any charges due from him for other goods. As there was no carriage of these goods to the consignee, the special lien provided for could not attach to them. When the consignor exercised his right of stoppage, the goods were deliverable to him, and the carrier's

right of detention depended on the relations thus created. If the consignor was not debtor for previous carriage, and had not contracted that these goods might be retained from him for such debt, then the carrier's lien did not extend beyond the charges applicable to the goods stopped, and on payment or tender of these he was entitled to a delivery of the goods. If the right of the carrier to extend its·lien by contract with the owner to the general balance due from such owner be conceded, as it may be, still the lien is confined to the goods of such owner. The goods which by the exercise of the right of stoppage became those of the consignor, cannot be made subject to a lien for the debt of the consignee. We concur in the conclusion reached by the court below, although we reach it by a somewhat different route.

The judgment is affirmed.