# Teller & Company, Appellants, *v.* American Railway Express Company.

*Carriers — Shippers — Stoppage in transitu — Bills of lading — Sales Act—Practice Act.*

The right of stoppage in transitu can only be exercised by one who has sold goods on credit to a buyer who is or becomes insolvent and it is not unreasonable that a carrier before it undertakes to obey such an order should have notice that the sale was on credit, that is, that the goods had not been paid for, and that the buyer was insolvent. Both conditions are necessary to justify a stoppage of goods in transitu, and it is not unreasonable that the notice of the seller's claim to exercise his right should set them forth.

Where, however, a carrier has assumed to act in pursuance of a notice lacking such definite information, and the facts actually justify such stoppage in transitu, because the sale was on credit and the buyer was insolvent, it cannot thereafter justify delivery in contravention of such order, on the ground that the notice under which it acted was not such as it might have required.

Where the statement of claim avers delivery to a carrier and order to stop the goods in transit accepted by the carrier and the carrier's negligent failure to comply therewith, a judgment on the affidavit of defense raising a question of law was improperly entered, on the ground that the stoppage order failed to state, as required by section 59 of the Sales Act, that the buyer was insolvent and had not paid the seller for the goods. Having assumed to act on the order, the carrier cannot justify its failure to carry it out on the ground that it might have required more specific information.

The Act of Congress of August 29, 1916, regulating interstate bills of lading provides that where a carrier delivers goods to one who is not lawfully entitled to the possession of them the carrier shall be liable to any one having a right of property or possession in the goods if he delivered the property otherwise than as authorized under the provisions of the law. It further provides that he shall be liable for the deliveries of goods to one authorized under the law if he had been requested by some person having a right of property not to make such delivery or had information at the time of the delivery that it was to a person not entitled to the possession.

An express receipt is a straight or nonnegotiable bill of lading within the Act of Congress of August 29, 1916.

Where a statement of claim alleges that a carrier in an inter-state shipment made delivery to a person authorized in the bill of lading, although properly requested not to do so by the shipper, the statement sets forth a case sufficient to go to a jury, and it is error under such circumstances to enter judgment for the defendant on the question of law.

Argued October 13, 1921. Appeal, No. 139, Oct. T., 1921, by plaintiffs, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1920, No. 8619, on question of law raised in an affidavit of defense in the case of Leopold H. Teller and Emanuel Zinn, trading as L. H. Teller & Company, *v.* American Railway Express Company, a corporation. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Assumpsit to recover the value of five packages of dress goods delivered by a common carrier in disregard of plaintiffs' notice of stoppage in transitu. Before SHOEMAKER, J.

The facts are stated in the opinion of the Superior Court.

The court, in banc, entered the following judgment and decree:

"The questions of law raised by affidavit of defense are decided against the plaintiffs and the judgment is entered for the defendant."

*Error assigned* was the judgment of the court.

*James Yearsley,* and with him *Bernard A. Illoway* and *Harry Felix,* for appellant.—The plaintiff made out a prima facie case to the exercise of the right of stoppage in transitu: Pennsylvania R. R. Co. v. American Oil Works, 126 Pa. 485; Atcheson, etc., R. Co. v. Harold, 241 U. S. 371; Adams Ex. Co. v. Croninger, 226 U. S. 491, 505-506; Mo. Kan. & Tex. Ry. v. Harriman, 227 U. S. 657, 671-672; Boston & Me. R. v. Hooker, 233 U. S. 97, 110; Atcheson, Topeka & Sante Fe Ry. v. Robinson,

233 U. S. 173, 180; Cleveland & St. L. Ry. v. Dettleback, 239 U. S. 588; Ga., Fla. & Ala. Ry. v. Blish Milling Co., 241 U. S. 190.

*William A. Schnader,* and with him *T. DeWitt Cuyler,* for appellee.

OPINION BY KELLER, J., March 3, 1922:

Defendant filed an affidavit of defense raising a question of law, under section 20 of the Practice Act of 1915, (P. L. 483), and the court below entered judgment for the defendant. To sustain the judgment it must appear that the averments in the plaintiffs' statement, if proven on the trial, would not make out a case against the defendant and a compulsory nonsuit would have to be entered: Jackson v. Myers, 260 Pa. 488; Bovaird v. Barrett, 78 Pa. Superior Ct. 68.

From the statement it appears that the plaintiffs who are engaged in business in Philadelphia, on November 17, 1920, delivered to the defendant for shipment to Abe Rosenberg, at Chicago, Illinois, five packages valued at $725, which the defendant accepted and gave plaintiffs its receipt therefor agreeing to carry and deliver the same upon the terms and conditions therein stated. The next day plaintiffs learned that the consignee, Rosenberg, was insolvent and they thereupon exercised their right of stoppage in transitu and notified the defendant company by letter delivered at its office, Eighteenth and Market streets, Philadelphia, the same day, to wit, November 18, 1920, to wire its agent at Chicago to hold said shipment and not deliver the same to the consignee. The defendant acknowledged receipt of said notice by postal card and later sent plaintiffs a bill for $1.92, charges in connection with said stoppage order, which plaintiffs paid. On November 20th, plaintiffs again wrote defendant asking it to recall said shipment and send the goods back to them, to which defendant replied on December 11th that the shipment had been delivered

to the consignee on November 22d; and on January 6, 1921, its representative wrote at more length: "I have received information from our Chicago Representative to the effect that the shipment was delivered to the consignee, Nov. 23d, 1920. The instructions you gave this Company to stop this shipment in transit were complied with—but circumstances were such that we could not intercept the shipment before a delivery was made to the consignee." Plaintiffs averred a loss of $724.50 by reason of the failure of defendant to stop delivery of said merchandise in accordance with said order.

The court below entered judgment in favor of the defendant because the notice to it (a copy of which was set forth in the statement), failed to state, as required by section 59 of the Sales Act of 1915 (P. L. 543, 559), that the buyer was insolvent and had not paid the seller of the goods. The appellant urges that these requirements of notice are lacking in the Uniform Sales Acts of other states, with which our act for the most part corresponds, and should be disregarded; but our legislature has the right, if it sees fit, to make such changes or alterations in the form of statutes as it deems best, (provided they are not in contravention of the Constitution of the United States or of this Commonwealth), and there is nothing in the section prescribing the requisites of notice for stoppage in transitu which is unreasonable or inconsistent with the rest of the act. The right of stoppage in transitu can only be exercised by one who has sold goods on credit to a buyer who is or becomes insolvent and it would seem not unreasonable that a carrier before it undertakes to obey such an order should have notice that the sale was on credit, that is, that the goods had not been paid for, and that the buyer was insolvent. Both conditions are necessary to justify a stoppage of goods in transitu, (section 57 of Sales Act; Hays & Black v. Mouille & Co., 14 Pa. 48, 50; 2 Kent Comm. 540; 35 Cyc. 493), and it is not unreasonable that the notice of the seller's claim to exercise his right should

set them forth. But the provisions of the act relating to such notice are for the protection of the carrier, not of the buyer, and if without express notice in compliance therewith, it is satisfied that a right of stoppage in transitu exists—and it can only exist where an unpaid seller has parted with the possession of goods and the buyer of them is or becomes insolvent—it may upon request of the shipper refuse delivery to the consignee and return the goods to the seller. Certainly the buyer, who is insolvent, or has become so before delivery of the goods, has no right to complain thereat, for in a sale upon credit, it is always an implied condition of such sale that the buyer shall continue in good credit until the goods shall come into his actual possession, and if while the goods are in the hands of the carrier, in transit, or in store at the end of the journey, with no intervening right in the way, the buyer becomes insolvent, the implied condition on which credit was given is broken and the vendor may resume the possession of the goods: Penna. R. R. Co. v. American Oil Works, 126 Pa. 485, 493. He has a right to refuse or countermand the final delivery if the vendee be in failing circumstances: White et al. v. Welsh et al., 38 Pa. 396, p. 420. The term "stoppage in transitu" is so common and its legal meaning and qualities are so well known, that its use almost necessarily implies a sale on credit to a buyer who is or has become insolvent, and is generally so received and acted upon. The letter from defendant's representative of January 6, 1921, apparently recognizes that this was a case of stoppage in transitu, that the company had so regarded it and acted upon it as instructed, and (in connection with the charge of $1.92), had telegraphed its representative at Chicago not to deliver the goods to the consignee, but, by reason of "circumstances" undisclosed, the delivery had nevertheless been made on November 23d, five days after the telegram should have been sent. Without considering the interstate character of the shipment, as later referred to, the carrier might

have refused to obey such a notice in the absence of definite information that the facts in the case were such as to justify the seller's stoppage of the goods in transitu, but if it assumed to act in pursuance of a notice lacking such definite information, and the facts actually justified such stoppage, that is, the sale was on credit and the buyer insolvent, it cannot thereafter justify a delivery in contravention of such order on the ground that the notice under which it acted was not such as it might have required: 10 Corpus Juris, 230.

There is another feature of the case, however, which, in our opinion, calls for a reversal of this judgment.

The shipment was interstate in character and is therefore governed by the federal laws regulating interstate commerce. "It is not disputable that what is known as the Carmack amendment to the act to regulate commerce (Act of June 29, 1906, Chap. 3591, section 7, 34 Stat. at L. 593, Comp. Stat. 1913, section 8592), was an assertion of the power of Congress over the subject of interstate shipment, the duty to issue bills of lading, and the responsibilities thereunder, which in the nature of things, excluded state action. Adams Exp. Co. v. Croninger, 226 U. S. 491, 505, 506; . . . . . . its [the Carmack amendment's] prime object was to bring about a uniform rule of responsibility as to interstate commerce and interstate commerce bills of lading": Atchison T. & S. F. R. Co. v. Harold, 241 U. S. 371, 378. Shortly after the decision of that case Congress passed the Act of August 29, 1916, Chap. 415, 39 Stat. at L. 538, Barnes Fed. Code, sections 7978-8022, U. S. Comp. Stat. 8604aaa-8604w., governing bills of lading in interstate commerce. We have no doubt that the express receipt given plaintiffs by defendant acknowledging the receipt of the goods shipped and agreeing to carry the same to their destination upon the terms and conditions therein set forth was a straight or nonnegotiable bill of lading within the act of Congress aforesaid. A bill of lading is defined to be "An instrument issued by the carrier to the consignor,

consisting of a receipt for the goods and an agreement to carry them from the place of shipment to the place of destination": 10 Corpus Juris, 192. "A written acknowledgment of the receipt of certain goods and an agreement for a consideration to transport and to deliver the same at a specified place to a person therein named or his order": 1 Bouvier's Law Dictionary, 355 (Rawle's 3d Revision). "A written acknowledgment of the receipt of goods and an agreement to transport and to deliver them at a specified place to a person named or on his order. Such instruments are sometimes called 'shipping receipts,' 'forwarders' receipts,' and 'receipts for transportation.' The designation, however, is not material": 4 R. C. L. 3; see also Empire Transp. Co. v. Wallace, 68 Pa. 302, 306. The term "receipt or bill of lading" is used in the amendment to the Commerce Act of August 9, 1916, chap. 301, 39 Stat. 441, Barnes Fed. Code, section 7976, U. S. Comp. Stat., section 8604a, and the words are apparently used synonymously and without distinction in U. S. v. Croninger, 226 U. S. 491, 508, 509. The shipping receipt given by defendant in the instant case came within the definitions above quoted and the decisions from which they are derived, and possessed the two-fold character distinctive of bills of lading, viz: a receipt and a contract to carry safely and deliver.

The Act of Congress of August 29, 1916, regulating interstate bills of lading is very similar in its provisions to our Uniform Bill of Lading Act of June 9, 1911, P. L. 838. The sections hereinafter referred to are contained in almost identical language in our own act. Sections 9 and 10 of the Federal Act are as follows:

Section 9. "A carrier is justified, subject to the provisions of the three following sections, in delivering goods to one who is—(a) A person lawfully entitled to the possession of the goods, or (b) the consignee named in a straight bill for the goods, or (c) a person in possession of an order bill for the goods, by the terms of

which the goods are deliverable to his order; or which has been endorsed to him, or in blank by the consignee, or by the mediate or immediate endorsee of the consignee."

Section 10. "Where a carrier delivers goods to one who is not lawfully entitled to the possession of them, the carrier shall be liable to anyone having a right of property or possession in the goods if he delivered the goods otherwise than as authorized by subdivisions (b) and (c) of the preceding section; and, though he delivered the goods as authorized by either of said subdivisions, he shall be so liable if prior to such delivery he (a) had been requested, by or on behalf of a person having a right of property or possession in the goods, not to make such delivery, or (b) had information at the time of the delivery that it was to a person not lawfully entitled to the possession of the goods. Such request or information, to be effective within the meaning of this section, must be given to an officer or agent of the carrier, the actual or apparent scope of whose duties includes action upon such a request or information, and must be given in time to enable the officer or agent to whom it is given, acting with reasonable diligence, to stop delivery of the goods."

Although the delivery in this case was made by the defendant to the consignee named in a straight bill for the goods, as provided in section 9, subdivision (b), its right to do so was qualified by the provisions of section 10, that though it delivered the goods as authorized by said subdivision, it is nevertheless liable to one having a right of property or possession in the goods if prior to such delivery it (a) had been requested, by or on behalf of a person having a right of property or possession in the goods, not to make such delivery, or (b) had information at the time of the delivery that it was to a person not lawfully entitled to the possession of the goods.

Sufficient facts are averred in the statement to justify a finding that the plaintiffs had a right of property or

possession in the goods within the meaning of the Act of Congress and their request not to make delivery to the consignee, having been made by letter delivered to the offices of the company at the place of shipment, complied, in our opinion, with the requirement of the act that it "must be given to an officer or agent of the carrier, the actual or apparent scope of whose duties includes action upon such request or information," especially in view of the fact that the carrier did act upon it. The purpose of this provision is to relieve the carrier from responsibility by reason of such requests made or information given to its employees whose duties are not concerned with the stoppage of goods in transitu and who have no authority to order such action, such as porters, janitors, laborers, mere collectors of shipments or delivery men, etc. As to letters or mail delivered to the offices of a carrier, it is incumbent on it to see that they are distributed to the proper department for suitable action; the shipper cannot be presumed to know the intimate details of the carrier's management of its business, or the particular person to whom mail should be addressed concerning the precise duty involved. In any event, the provision has no application here, for the fact, as appears from the plaintiffs' statement, that the order to stop the goods was actually sent by the company justifies the inference that the letter reached an officer or agent of the defendant the scope of whose duties included action upon such request.

Giving proper effect to the Federal Bills of Lading Act we are of opinion that the plaintiffs' statement set forth a case sufficient to go to the jury; that if they proved at the trial the facts averred therein a compulsory nonsuit could not properly be directed and that being so, the defendant was not entitled to judgment on the question of law raised in the affidavit of defense, but should have been ordered to answer on the facts.

The judgment is reversed with a procedendo.